SEXTON v RYDER TRUCK RENTAL, INC

STORIE v SOUTHFIELD LEASING, INC

Docket Nos. 61606, 63362. Argued April 15, 1980 (Calendar Nos. 1, 2).
—Decided June 14, 1982.

Richard W. Sexton and Karen S. Sexton, his wife, brought an action against Ryder Truck Rental, Inc., under the Michigan motor vehicle owners' liability statute for injuries which Richard Sexton suffered when a truck owned by the defendant, in which he was a passenger, overturned in Wytheville, Virginia. The defendant leased the truck at its office in Grand Rapids to the Kalamazoo Valley Plant Grower's Co-op, Richard Sexton's employer, and the truck was being driven by another employee. Both employees were residents of Michigan; their purpose was to deliver a load of plants for their employer, and they were to return directly to Michigan after the delivery. The Kalamazoo Circuit Court, Robert L. Borsos, J., granted summary judgment for the defendant, holding that Virginia law, by which ownership of a vehicle does not make the owner liable for its operation, applied under the rule of *lex loci delicti.* The Court of Appeals, R. B. Burns, P.J., and J. H. Gillis, J. (D. C. Riley, J., concurring in result), affirmed (Docket No. 77-4340). Plaintiffs Sexton appeal.

Jareta D. Storie brought an action for the wrongful death of Charles E. Storie against Southfield Leasing, Inc., under the Michigan aircraft owners' liability statute. An airplane was leased from the defendant by the decedent's employer, Lebow Associates, Inc., of Troy, Michigan. Milton Lebow, the company

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Conflict of Laws §§ 99, 101, 118.
    Modern status of rule that substantive rights of parties to a tort action are governed by the law of the place of the wrong. 29 ALR3d 603.

[2] 16 Am Jur 2d, Conflict of Laws § 16.

[3, 6, 7] 16 Am Jur 2d, Conflict of Laws §§ 102, 103.

[4, 6] 16 Am Jur 2d, Conflict of Laws § 7.

[5] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 641, 668.
    8 Am Jur 2d, Aviation §§ 92, 93.

[6] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 665, 668.

president, was flying the plane on a business trip from Grand Prix Airport in Troy when it crashed, with Charles Storie as a passenger, near Akron, Ohio. Defendant Southfield brought a third-party action against Lebow Associates, Inc., for indemnity under the parties' rental agreement. The Oakland Circuit Court, William J. Beer, J., granted summary judgment for the defendant on the ground that Ohio law, by which ownership of an aircraft did not make the owner liable for its operation, governed under the rule of *lex loci delicti.* The Court of Appeals, Cynar, P.J., and D. E. Holbrook, Jr., J. (D. C. Riley, J., dissenting), reversed, holding that the public policy of Michigan to encourage supervision over the maintenance of aircraft would be thwarted by the application of Ohio law and that federal aircraft legislation does not pre-empt the field of legislation on the liability of aircraft owners for injuries suffered inside an airplane (Docket No. 77-3955). Defendant Southfield Leasing, Inc., appeals.

In opinions by Justices Williams, Kavanagh, and Levin, the Supreme Court *held:*

The Michigan owners' liability statutes apply in these cases rather than the law of the places where the wrongs occurred.

Justice Williams, joined by Justices Levin and Moody, would hold that in tort actions which arise from accidents involving aircraft or motor vehicles in another state and in which the parties are Michigan residents or corporations doing business in Michigan, the courts will apply the *lex fori,* and not *lex loci delicti.* The holding is reached without reference to any particular state policy.

1. The traditional rule, *lex loci delicti,* is that when a cause of action is brought for an injury sustained in a foreign jurisdiction, the substantive rights of the parties are to be automatically fixed by, and governed by, the law of the place where the wrong occurred. It has been supported largely by reliance on the original Restatement of Conflicts. The arguments advanced in favor of the traditional rule included discouraging forum shopping and furthering the goals of certainty and predictability by its ease of application. Modern scholars and courts, however, have decried the rigidity of the traditional rule which often produced obvious, rather than just, results by its failure to consider the interests in the litigated matter of jurisdictions other than the jurisdiction where the tort occurred. To avoid the results courts have grafted exceptions onto the rule, or circumvented its operation by straining the facts. Devotion to the rigidities of *lex loci delicti* no longer is either the reason-

able policy to follow in every case or the generally accepted law in the United States.

2. The courts in Michigan have frequently departed from *lex loci delicti* to bring about the application of Michigan law. The practice has been to employ manipulative techniques to avoid the strictures of the rule, rather than to adopt new approaches. The automatic application of the rule was rejected by the Court in one case where it would have operated to frustrate what the Court announced as the public policy of Michigan's common law. That case also indicated that the future application of the rule would be decided case by case to reach the proper result without the recognized perils of adopting a new doctrine of conflict of laws.

3. The state of the law is in such flux that there is no overwhelming pressure of stare decisis to compel application of *lex loci delicti* unless it would be in the best interest of the people of the state. The chief argument in its favor, that it provides certainty and predictability, is no longer tenable. The rule simply has not been followed by Michigan courts or federal courts in Michigan applying Michigan law. The other argument in the rule's favor, avoidance of forum shopping, is not strong when compared with the interests of the state's citizens in service in their own state, and the interest of the state in seeing that its citizens are afforded the state's protection. Additionally, where, as in these cases, the parties are Michigan citizens, the state of the place of the wrong normally would have no interest in the litigation.

4. The owners' liability statutes are not given extraterritorial application in these cases by applying the *lex fori* where the accidents occurred in other states. The owner-operator relationship giving rise to the vehicle owners' liability arose in Michigan. Michigan has the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries. By enacting the statutes in question, the Legislature intended to regulate the relationship between the owners and the operators of aircraft and motor vehicles, not the tortious conduct of the operators of the vehicles. The purpose of the statutes is to place the risk of damage or injury upon the person who has ultimate control of a vehicle. In order to achieve the legislative purpose, the statutes must be given uniform application, including application to Michigan residents traveling outside the state. Application of the *lex loci delicti* would undermine the effectiveness of the statutes. Thus, even if application of the owners' liability

statutes were extraterritorial, it would be proper to give them uniform application.

The decision of the Court of Appeals in *Sexton* is reversed, and the judgment of the Court of Appeals in *Storie* is affirmed.

Justice Kavanagh, joined by Justices Levin and Fitzgerald, concurred in the result reached by Justice Williams. The doctrine of *lex loci delicti* has been applied in Michigan tort law with some consistency for about 100 years, but the Court has never explained why the law of the place of the wrong should determine the rights of the parties. The fact that an accident occurred beyond the boundaries of the state is not controlling or even of great significance in determining what law applies. The power of the state to effect legal consequences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences. The status of ownership giving rise to the legal consequence of liability has been regulated in Michigan by statutes. Under the facts of the cases, the Michigan owners' liability statutes applied. Relief should not have been denied in either case on the ground that the law of the place of the wrong governed the action.

Justice Levin concurred with Justices Williams and Kavanagh. He agreed with Justice Kavanagh that Michigan law applies in all personal injury and property damage actions without regard to the parties' residency or business activities within the state unless there is a compelling reason for applying the law of another jurisdiction. Merely because an injury arises out of an occurrence in another state is an insufficient reason for applying foreign law. He noted, however, that choice of law in other fields of law in Michigan should continue to be governed by established rules.

1. Where both parties are Michigan residents or corporations doing business in the state, ordinarily there will be insufficient reason for applying foreign law. Unless a defendant is subject to long-arm jurisdiction, the question whether Michigan law applies will not arise. In addition, where a plaintiff also has no relationship with Michigan, a case is subject to dismissal under the doctrine of *forum non conveniens.* There appears to be little reason to apply one choice-of-law rule where a defendant is subject to Michigan jurisdiction because of residency or business activities and another where jurisdiction attaches because of some other relationship with the state.

2. The court's retreat from *lex loci delicti* is limited to personal injury and property damage actions and does not extend to other fields of law. Choice of law in other fields

continues to be governed by precedent, and neither the Court of Appeals nor trial courts may depart from previously established choice-of-law rules.

3. In personal injury or property damage actions where the trial court concludes that there is a compelling reason to apply foreign law, the court should state the reasons for its conclusion on the record.

Justice Ryan, dissenting, joined by Chief Justice Coleman, was not persuaded that the Court should retreat from its previous position which would result in the application of the doctrine of *lex loci delicti* in these cases. He would affirm the judgment of the Court of Appeals in *Sexton* and would reverse its judgment in *Storie.*

84 Mich App 69; 269 NW2d 308 (1978) reversed.

90 Mich App 612; 282 NW2d 417 (1979) affirmed.

OPINION BY WILLIAMS, J.

1. CONFLICT OF LAWS — TORTS — AUTOMOBILES — AVIATION — *LEX FORI* — *LEX LOCI DELICTI.*

   *In tort actions arising from accidents involving aircraft or motor vehicles in another state in which the parties are Michigan residents or corporations doing business in Michigan, the courts must apply Michigan law and not the law of the place of the injury (MCL 257.401, 259.180a; MSA 9.2101, 10.280[1]).*

2. CONFLICT OF LAWS — *LEX LOCI DELICTI* — PUBLIC POLICY.

   *The traditional rule to resolve conflict-of-laws issues,* lex loci delicti, *that the law of the place of the wrong governs the plaintiff's cause of action, is no longer either the reasonable policy to follow in every case or the generally accepted law in the United States.*

3. CONFLICT OF LAWS — TORTS — AUTOMOBILES — AVIATION — OWNERS' LIABILITY — COMMON LAW.

   *The natural development of case law makes it just and equitable, and also in the best interests of predictability and uniformity of the law, for a Michigan court to apply Michigan law in an action for an automobile or aircraft owner's liability for an accident in another state where the plaintiff and defendant are based in Michigan.*

4. CONFLICT OF LAWS — TORTS — AUTOMOBILES — AIRCRAFT — *LEX FORI* — EXTRATERRITORIALITY.

   *Applying the law of Michigan in tort actions arising from acci-*

dents involving aircraft or motor vehicles in another state in which the parties are based in Michigan, does not give extraterritorial application to those laws; Michigan has the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries (MCL 257.401, 259.180a; MSA 9.2101, 10.280[1]).

5. AUTOMOBILES — AIRCRAFT — TORTS — OWNERS' LIABILITY — CONFLICT OF LAWS.

The statutes which provide for the liability of owners of aircraft or motor vehicles for injury or damage arising out of the use of the aircraft or vehicle were intended to regulate the relationship between the owners and operators of the vehicles and not the tortious conduct of the operators; their purpose is to place the risk of damages or injury upon the person who has ultimate control of a vehicle, and this purpose, to be achieved, must be given uniform application, including application to Michigan residents traveling outside the state; thus, where such accidents occur between Michigan residents outside the state and an action is brought in a Michigan court, Michigan law will apply (MCL 257.401, 259.180a; MSA 9.2101, 10.280[1]).

CONCURRING OPINION BY KAVANAGH, J.

6. CONFLICT OF LAWS — LEGISLATIVE POWER — EXTRATERRITORIAL EFFECT — TORTS.

A state has the power to effect legal consequences on occurrences outside its boundaries where it has control over the status which gives rise to those consequences; in Michigan, the status of ownership of a motor vehicle or an aircraft which gives rise to liability for personal injury or property damage resulting from the operation of the vehicles is regulated by statutes, and the statutes apply irrespective of where such injury or damage occurs.

CONCURRING OPINION BY LEVIN, J.

7. CONFLICT OF LAWS — TORTS — LEX FORI.

Michigan law applies in all personal injury and property damage actions brought in Michigan courts where the defendant is subject to the jurisdiction of the Court without regard to whether the parties are Michigan residents or are doing business in Michigan unless there is a compelling reason for applying foreign law.

*Randolph McCarthy, Jr.,* for plaintiffs Sexton.

*Schaden & Heldman* (by *Victoria C. Heldman)* and *Richard M. Goodman, P.C.* (by *Susan E. Lister),* for plaintiff Storie.

*James, Dark & Brill* (by *J. William Dark)* for defendant Ryder Truck Rental, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *John P. Jacobs* and *C. Barry Wetherington)* for defendant Southfield Leasing, Inc.

Amici Curiae:

*Faintuck, Shwedel, Wolfram, McDonald & Zipser* (by *William G. Wolfram)* for Michigan Defense Trial Counsel and Association of Defense Trial Counsel.

*Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh)* for Michigan Trial Lawyers Association.

WILLIAMS, J. These companion cases challenge us to decide whether this Court should continue to follow the doctrine of *lex loci delicti,* which was upheld more than a decade ago in *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969). This Court, in granting leave to appeal, said:

"The parties are directed to include among the issues to be briefed: (1) whether the doctrine of *lex loci delicti* should be abandoned in favor of the dominant or substantial contacts test for determining the law to be applied in a conflict of laws context; or whether, in lieu of abandoning the doctrine of *lex loci delicti,* the public policy of this state mandates application of Michigan law under the facts of this case, and (2) whether the Michigan owners' liability statutes have extra-territorial application." 407 Mich 897, 908 (1979).

Review of these matters convinces us that not only has there been a major retreat from the doctrine of *lex loci delicti* among scholars and the state courts, but that in Michigan itself the doctrine is at least as much honored in the breach as observed. Furthermore, both *Abendschein* and *Kaiser v North,* 292 Mich 49; 289 NW 325 (1939), on which *Abendschein* so strongly relied, have been seriously eroded, and *Kaiser* has in effect been overruled.

As a consequence, not following *lex loci delicti* in these cases does not flout stare decisis. Furthermore, *Abendschein* is not on all fours with the facts of these cases. *Abendschein* dealt with a Michigan plaintiff and a New York defendant with a third-state accident. Here both the plaintiffs and defendants are Michigan residents, or corporations doing business in Michigan, with a foreign accident.

Upon consideration of all the arguments for *lex loci* and the alternate choice-of-law methodologies as well as the Michigan precedents, we presently adopt no extant methodology outright but hold that when two residents, or two corporations doing business in the state, or any combination thereof, are involved in an accident in another state, the forum will apply its own law.

Nor are we persuaded that the application of the owners' liability statutes under these facts results in an extraterritorial application of Michigan law. The cause of action arising under the statutes is not founded so much on defendants' conduct as it is on the relationship between the owner and the operator. In both cases the owner-operator relationship took place exclusively in Michigan. Therefore, the application of the owners' liability statutes under these facts is not an extraterritorial

application. *Sexton* is reversed, and *Storie* is affirmed.

## I. FACTS

### A. *Sexton v Ryder Truck Rental, Inc*

On March 29, 1976, plaintiff and a co-employee, Michigan residents and employees of a Michigan corporation, were operating a truck leased from defendant during the course of their employment. The truck was titled and registered in the name of defendant Ryder Truck Rental, Inc., a Florida corporation authorized to do business in Michigan, and leased from defendant's offices in Grand Rapids, Michigan, where it had been principally garaged and, presumably, insured.

Plaintiff had embarked on a business trip to an unspecified location outside of Michigan. The journey originated and was to have terminated in Kalamazoo, Michigan, at the employer's place of business. Early in the morning of March 29, however, the truck overturned in Wytheville, Virginia. Plaintiff, who occupied the sleeper portion of the vehicle at the time of the accident, suffered serious injury. The record does not indicate that any other person was injured or that other property damage was sustained.

Plaintiff and his wife instituted a tort action for personal injuries against the Michigan defendant-owner in Kalamazoo Circuit Court pursuant to the Michigan motor vehicle owners' liability statute which provides in pertinent part that "[t]he owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle". MCL 257.401; MSA 9.2101.

Defendant moved for summary judgment on the ground that since both the accident and injury occurred in Virginia, pursuant to the *lex loci* rule, the law of Virginia rather than the Michigan law should control disposition of plaintiff's asserted owners' liability claim. Since Virginia had not provided for such owners' liability actions by statute or at common law, Virginia law should be applied to disallow plaintiff's suit.

Because the accident occurred in Virginia, which had made no provision for owner's liability, Judge Borsos granted defendant's motion for summary judgment. In so ruling, Judge Borsos remarked:

"Since Michigan is the forum, this court will apply Michigan's choice of law rule. There is no doubt that traditionally Michigan, like all other states, has applied the common-law rule—'the place of the wrong'—when confronted with a conflict of state laws. But while Michigan has clung to this rule, many other states have shifted to a new approach, the dominant contacts method. Although this method has its difficulties, there is much to be said for it; *under the significant contacts rule, cases such as this one appear to reach a more reasonable result.* In this case, it is clear that Virginia really has no interest at stake at all. The parties and property involved are all from Michigan, and there is nothing in this case that would affect the safety of Virginia highways or the burden on its hospitals or social service rolls. By contrast, Michigan has much at stake. The Legislature has decided for policy reasons that those who own automobiles have such powerful instruments at their disposal that when they turn over the keys to someone else, they are still responsible. This is important not only for the security of Michigan roads, but for the security of Michigan citizens.

\*   \*   \*

"Unfortunately (as this court believes), the court is precluded from using this more equitable approach. In

1969, the Michigan Supreme Court considered the relative merits of the two rules and held that Michigan would retain *lex loci delicti* unless the Legislature changed the rule. *Abendschein v Farrell,* 382 Mich 510 (1969). There is no need for legislative sanction of any change, however, since choice-of-law rules are fundamentally judge-made guidelines that direct a forum court which laws to use. *And while the Court clearly examined the policies behind both methods eight years ago, this court believes that since 1969, scholars and sister states have further shown that the modern, better-reasoned approach is that we apply the law of the state that has a greater interest—not the law of the state where the accident just happened to occur.*

\* \* \*

"Despite all this, however, this court remains mindful of its duty to stare decisis. *Given the opportunity, this court would hasten to use any exception it could find to the* lex loci delicti *precedent, simply because it is particularly unfair and extreme to apply it in this case.* But the court concludes that this is just what *Abendschein* and the cases before it demand." (Emphasis supplied.)

On appeal, Judge J. H. Gillis felt "bound to follow the mandate of the Supreme Court [in *Abendschein, supra]* and apply the outmoded doctrine of *lex loci delicti* to this case". *Sexton v Ryder Truck Rental, Inc,* 84 Mich App 69, 70; 269 NW2d 308 (1978). Applying that doctrine, Judge Gillis "reluctantly" affirmed the trial court, *id.,* 74, but stated:

"In doing so, this writer reaches what he perceives to be an inequitable result, and urges plaintiffs to appeal this case to the Supreme Court, who will hopefully abandon the *lex loci delicti* doctrine and adopt the more equitable 'dominant contacts' approach." *Id.,* 70.

We granted plaintiff's application for leave to appeal on October 31, 1979. 407 Mich 897 (1979).

## B. *Storie v Southfield Leasing, Inc*

On January 17, 1974, plaintiff's decedent was the sole passenger in a leased 1968 Beechcraft "Bonanza" aircraft piloted by the president of Lebow Associates, the Michigan corporation for which both worked. During the course of their round-trip business journey from Michigan to visit business accounts in the Cleveland-Akron area of Ohio, both Michigan residents were killed when the aircraft crashed near Akron, Ohio. No other fatalities or injuries to residents or property were reported in the record. Decedent is survived by plaintiff widow and the couple's two sons, all of whom reside in Michigan.

The aircraft was owned and registered by defendant Southfield Leasing, Inc., a Michigan corporation having its principal place of business in Southfield, Michigan. Defendant had leased the aircraft to Lebow Associates. The aircraft was purchased from Production Automation Corporation with financing secured from the Detroit Bank and Trust Company, both Michigan corporations; it was presumably insured in Michigan. At all pertinent times, the aircraft had been stationed and maintained at Grand Prix Airport located in Troy, Michigan.

Approximately eight months after the crash, plaintiff instituted a wrongful death action against the Michigan defendant-owner in Wayne Circuit Court; defendant, in turn, lodged a third-party complaint against Lebow Associates pursuant to an indemnity provision in the parties' lease agreement. Subsequent to a transfer of venue to Oakland Circuit Court, plaintiff stipulated that its sole claim against the Michigan defendant-owner was pursuant to the Michigan aircraft owner's liability statute which provides in pertinent part that "[t]he owner * * * of an aircraft shall be liable for

any injury occasioned by the negligent operation of the aircraft". MCL 259.180a; MSA 10.280(1).

Defendant Southfield Leasing moved for summary judgment alleging that the question of an owner's liability for aircraft injury or death "on the surface of the earth" was controlled by 49 USC 1404;[1] accordingly, this federal legislation preempted the Michigan aircraft owner's liability statute. Third-party defendant Lebow Associates filed a brief in support of defendant's motion urging that summary judgment was additionally proper for the reason that, pursuant to the *lex loci delicti* doctrine, plaintiff's action arising from an Ohio accident and fatality was foreclosed by Ohio law which did not provide for aircraft ownership liability.

Applying the *lex loci delicti* doctrine, the trial court granted summary judgment on the ground that since death occurred in Ohio, Ohio rather than Michigan law governed disposition of the Michigan plaintiff's suit and thereby precluded the Michigan owner's liability. The pre-emption argument was rejected.

The Court of Appeals, D. C. Riley, J., dissenting, reversed the trial court's *lex loci* ruling on the ground that application of Ohio law to preclude

---

[1] "No person having a security interest in, or security title to, any civil aircraft, aircraft engine, or propeller under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft, aircraft engine, or propeller under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft, aircraft engine, or propeller so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, aircraft engine, or propeller or by the ascent, descent, or flight of such aircraft, aircraft engine, or propeller or by the dropping or falling of an object therefrom, unless such aircraft, aircraft engine, or propeller is in the actual possession or control of such person at the time of such injury, death, damage, or loss."

the Michigan plaintiff's recovery against the Michigan aircraft owner would contravene Michigan public policy as codified in the aircraft owner's liability statute. *Storie v Southfield Leasing, Inc,* 90 Mich App 612; 282 NW2d 417 (1979). Application of the law of Ohio would undermine prevailing Michigan policy "by permitting owners of airplanes to escape liability on the basis of the mere fortuity that the injury did not occur within the boundaries of this state". *Id.,* 620. The majority also ruled that the federal statute did not pre-empt the Michigan aircraft owner's liability statute and remanded the matter for further proceedings.[2]

We granted leave to appeal on November 8, 1979. 407 Mich 908 (1979).

## II. PROS AND CONS OF *LEX LOCI DELICTI*

For a great many years, Michigan embraced the Bealeian conflict-of-laws notion that when a cause of action is maintained for injury sustained in a foreign jurisdiction, the substantive rights of the parties are to be automatically fixed and governed by the law of the place where the wrong occurred[3]

---

[2] Defendant in *Storie* has additionally argued that even if this Court chooses to either abandon the *lex loci delicti* doctrine or carve out a public-policy exception to that doctrine on the facts of the case, application of either the Michigan aircraft owner's liability statute, MCL 259.180a; MSA 10.280(1), or Ohio law is nonetheless pre-empted by operation of 49 USC 1404 which would preclude suit. Like the Court of Appeals in *Storie,* we reject defendant's argument and find that plaintiff's action is governed by the applicable Michigan statute. See *Storie v Southfield Leasing, Inc,* 90 Mich App 612, 620-623; 282 NW2d 417 (1979). And for interpretation of language similar to the federal statutory language in a New Jersey statute see *Prentiss v National Airlines, Inc,* 112 F Supp 306 (D NJ, 1953).

[3] Application of the substantive law of the jurisdiction where the tort occurred has been the unanimously accepted rule in Michigan from 1894 to 1969, beginning with *Wingert v Wayne Circuit Judge,* 101 Mich 395; 59 NW 662 (1894). It was applied in 1897 *(Turner v St Clair Tunnel Co,* 111 Mich 578, 584; 70 NW 146 [1897]); 1927 *(Petru-*

—the *lex loci delicti*.[4] In support of this rule,[5] courts in Michigan as well as other jurisdictions have largely relied on the teachings of the original Restatement Conflict of Laws, and particularly § 378 of that treatise which states: "The law of the place of wrong determines whether a person has sustained a legal injury." "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." *Id.*, § 377.[6]

*sha v Korinek*, 237 Mich 583, 589-590; 213 NW 188 [1927]); 1933 *(Perkins v Great Central Transport Corp*, 262 Mich 616, 619-620; 247 NW 759 [1933]); 1935 *(Hazard v Great Central Transport Corp*, 270 Mich 60, 71; 258 NW 210 [1935]); 1936 *(Eskovitz v Berger*, 276 Mich 536, 540; 268 NW 883 [1936]); 1939 *(Kaiser v North*, 292 Mich 49, 54; 289 NW 325 [1939]); 1945 *(Summar v Besser Mfg Co*, 310 Mich 347, 352; 17 NW2d 209 [1945]); 1949 *(Bostrom v Jennings*, 326 Mich 146, 151; 40 NW2d 97 [1949]); 1962 *(Goldberg v Koppy Tool & Die Co*, 365 Mich 469, 472; 113 NW2d 770 [1962]); 1965 *(Griggs v Griggs*, 374 Mich 268, 270; 132 NW2d 163 [1965]); and, most significantly, 1969 *(Abendschein v Farrell*, 382 Mich 510, 516; 170 NW2d 137 [1969]).

[4] For a detailed treatment of the *lex loci delicti* rule and its relationship to modern choice-of-law methodologies, see Westbrook, *A Survey & Evaluation of Competing Choice-of-Law Methodologies: The Case for Eclecticism*, 40 Mo L Rev 407 (1975) (hereinafter cited as Westbrook).

[5] The term "jurisdiction-selecting" has been coined by Professor Cavers to describe the effect of the *lex loci* rule. Cavers, *A Critique of the Choice-of-Law Problem*, 47 Harv L Rev 173, 198 (1933). Professor Cavers used this phrase to describe rules which locate the state whose law is to be applied without consideration of the substantive content of that law. Presaging the contemporary methodologies, Cavers emphasized that the Restatement Conflict of Laws approach resulted in an often unjust choice between two specific substantive rules of law, thus wholly ignoring the special facts of the case as well as the purposes of the conflicting laws. Akin to Cavers, modern scholars urge an examination of the policies embodied in the conflicting rules and a weighing of other values at stake in a choice-of-law problem, rather than a conceptual analysis of rules emerging only from the sphere of the wrong. See Leflar, *Conflicts Law: More on Choice-Influencing Considerations*, 54 Cal L Rev 1584, 1598 (1966).

[6] In Comment, *Babcock v Jackson: The Transition From the Lex Loci Delicti Rule to the Dominant Contacts Approach*, 62 Mich L Rev 1358-1359 (1964), the operation of the *lex loci delicti* doctrine was succinctly summarized:

"The traditional rule for choice of tort law has been that the *lex loci delicti,* the law of the place of the wrong, determines all questions

The traditional advantages advanced on behalf of the *lex loci* rule have included discouraging forum shopping[7] and furthering the goals of certainty and predictability[8] through its ease of application, thus simplifying the task of both lawyers and the courts.

Despite these reputed advantages, modern scholars[9] and about half or more of the states[10] have rejected its rigidity since the rule often produced

of substantive law in tort suits, unless that law is contrary to a strong public policy of the forum. The rule has been associated historically with the vested rights theory, under which rights and obligations defined by the law of a particular jurisdiction vest in the parties and follow them into any other jurisdiction where suit may be brought. The vested rights theory presupposes that there is a single jurisdiction in which rights vest, even though the important aspects of the transaction may have occurred in more than one jurisdiction. The theory consequently requires a jurisdiction-selecting rule to determine which law defines the rights which have vested, and the *lex loci delicti* principle has served as this jurisdiction-selecting rule in suits for torts. It selects the law of the place of injury to govern all issues that arise." (Footnotes omitted.)

The *lex loci* rule was engineered to effect the "vested rights" doctrine. This doctrine was described in *Slater v Mexican National R Co,* 194 US 120, 126; 24 S Ct 581; 48 L Ed 900 (1904):

"The theory of the foreign suit is that although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, an *obligatio,* which, like other obligations, follows the person, and may be enforced wherever the person may be found."

See 2 Beale, Conflict of Laws, pp 1286-1292; Restatement Conflict of Laws, §§ 377-392.

[7] Cramton, Currie & Kay, Conflict of Law (2d ed), p 7; Cheatham & Reese, *Choice of Applicable Law,* 52 Colum L Rev 959, 969, 977 (1952).

[8] *Id.;* Comment, *Selection of Law Governing Measure of Damages for Wrongful Death,* 61 Colum L Rev 1497, 1508 (1961); Comment, *Babcock v Jackson: The Transition From the Lex Loci Delicti Rule to the Dominant Contacts Approach,* 62 Mich L Rev 1358, 1359 (1964).

[9] The *lex loci delicti* rule has come under increasing attack from the writers. See, *e.g.,* in chronological order, Lorenzen, *Territoriality, Public Policy and the Conflict of Laws,* 33 Yale L J 736 (1924); Yntema, *The Hornbook Method and the Conflict of Laws,* 37 Yale L J 468 (1928); Lorenzen, *Tort Liability and the Conflict of Laws,* 47 L Quarterly Rev 483 (1931); Cook, *Tort Liability and the Conflict of Laws,* 35 Colum L Rev 202 (1935); Rheinstein, *The Place of Wrong: A Study in the Method of Case Law,* 19 Tulane L Rev 4, 165 (1944); Cheatham, *American Theories of Conflict of Laws: Their Role and Utility,* 58 Harv L Rev 361 (1945); Morris, *The Proper Law of a Tort,*

64 Harv L Rev 881 (1951); Currie, *Survival of Actions: Adjudication Versus Automation in the Conflict of Laws,* 10 Stanford L Rev 205 (1958); Stumberg, *"The Place of the Wrong" Torts and the Conflict of Laws,* 34 Wash L Rev 388 (1959); Ehrenzweig, *The Lex Fori—Basic Rule in the Conflict of Laws,* 58 Mich L Rev 637 (1960); Currie, *Conflict, Crisis and Confusion in New York,* 1963 Duke L J 1; Reese, *Choice of Law: Rules or Approach,* 57 Cornell L Rev 315 (1972); Westbrook, fn 4, *supra.*

[10] Those courts which have rejected the *lex loci delicti* rule are included in the following non-exhaustive list:

ARIZONA: *Moore v Montes,* 22 Ariz App 562; 529 P2d 716 (1974);

CALIFORNIA: *Reich v Purcell,* 67 Cal 2d 551, 555; 63 Cal Rptr 31; 432 P2d 727, 729 (1967);

COLORADO: *First National Bank in Fort Collins v Rostek,* 182 Colo 437; 514 P2d 314 (1973);

ILLINOIS: *Wartell v Formusa,* 34 Ill 2d 57, 59-60; 213 NE2d 544, 545-546 (1966);

IOWA: *Zeman v Canton State Bank,* 211 NW2d 346 (Iowa, 1973);

KENTUCKY: *Wessling v Paris,* 417 SW2d 259, 260 (Ky, 1967);

LOUISIANA: *Jagers v Royal Indemnity Co,* 276 So 2d 309 (La, 1973);

MAINE: *Beaulieu v Beaulieu,* 265 A2d 610 (Me, 1970);

MASSACHUSETTS: *Pevoski v Pevoski,* 371 Mass 358; 358 NE2d 416 (1976);

MINNESOTA: *Balts v Balts,* 273 Minn 419, 424-426; 142 NW2d 66, 70 (1966);

MISSISSIPPI: *Mitchell v Craft,* 211 So 2d 509 (Miss, 1968);

MISSOURI: *Kennedy v Dixon,* 439 SW2d 173 (Mo, 1969);

NEW HAMPSHIRE: *Clark v Clark,* 107 NH 351, 352-353; 222 A2d 205, 207 (1966);

NEW JERSEY: *Mellk v Sarahson,* 49 NJ 226, 234-235; 229 A2d 625 (1967);

NEW YORK: *Babcock v Jackson,* 12 NY2d 473, 477-478; 240 NYS2d 743; 191 NE2d 279, 280-283 (1963);

NORTH DAKOTA: *Issendorf v Olson,* 194 NW2d 750 (ND, 1972);

OKLAHOMA: *Brickner v Gooden,* 525 P2d 632, 637 (Okla, 1974);

OREGON: *Casey v Manson Construction & Engineering Co,* 247 Or 274, 277; 428 P2d 898 (1967);

PENNSYLVANIA: *Griffith v United Air Lines, Inc,* 416 Pa 1, 20-21; 203 A2d 796, 805 (1964);

RHODE ISLAND: *Busby v Perini Corp,* 110 RI 49; 290 A2d 210 (1972);

TEXAS: *Gutierrez v Collins,* 583 SW2d 312, 318 (Tex, 1979);

WASHINGTON: *Johnson v Spider Staging Corp,* 87 Wash 2d 577; 555 P2d 997 (1976);

WISCONSIN: *Wilcox v Wilcox,* 26 Wis 2d 617, 621; 133 NW2d 408 (1965);

FEDERAL COURTS: *Merchants National Bank & Trust of Fargo v United States,* 272 F Supp 409, 420 (D ND, 1967); *Williams v Rawlings Truck Line, Inc,* 123 US App DC 121, 124; 357 F2d 581, 584 (1965).

Professor Robert A. Sedler offers the following table: "Among the 50

obvious rather than just results through its failure to consider the interests of other jurisdictions in the litigated matter.

Judge Fuld criticized continued application of the *lex loci delicti* rule in the seminal case of *Babcock v Jackson,* 12 NY2d 473, 478; 240 NYS2d 743; 191 NE2d 279, 281 (1963):

"Although espoused by such great figures as Justice Holmes and Professor Beale, *the vested rights doctrine has long since been discredited because it fails to take account of underlying policy considerations in evaluating the significance to be ascribed to the circumstance that an act had a foreign situs in determining the rights and liabilities which arise out of that act. 'The vice of the vested rights theory',* it has been aptly stated, *'is that it affects to decide concrete cases upon generalities which do not state the practical considerations involved'.* More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues. It is for this very reason that, despite the advantages of certainty, ease of application and predictability which it affords, there has in recent years been increasing criticism of the traditional rule by commentators and a judicial trend towards its abandonment or modification." (Footnotes and citations omitted, emphasis supplied.)

Chief Justice Traynor had this to add in his equally significant opinion in *Reich v Purcell,* 67 Cal 2d 551, 555; 63 Cal Rptr 31; 432 P2d 727, 730 (1967):

"Ease of determining applicable law and uniformity

states and the District of Columbia, the breakdown is as follows: abandoned the place of the wrong rule—27; adhered to the place of the wrong rule—18; have not yet passed on the question—6". Sedler, *Choice of Law in Michigan: A Time to Go Modern,* 24 Wayne L Rev 829, fn 12, p 831 (1978).

of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, *i.e.*, to determine the law that most appropriately applies to the issue involved. Moreover, as jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved, that law no longer affords even a semblance of the general application that was once thought to be its great virtue." (Citations omitted.)

In a recent opinion, the Supreme Court of Texas abandoned the traditional *lex loci* doctrine. *Gutierrez v Collins*, 583 SW2d 312, 317 (Tex, 1979). Justice Johnson disposed of the principal arguments favoring the traditional approach as follows:

"The short answer to the first argument [that the *lex loci delicti* doctrine provides a uniform, consistent, and predictable rule of law] is that the traditional rule in its search for uniformity of result and ease of application, ignored the very substantial interests of the forum state in applying its own law. The results reached were most often arbitrary and unjust. To avoid these results, courts engrafted exceptions to the rule or circumvented its operation by strained characterizations of the facts. This led to an undermining of uniformity and predictability which were the supposed virtues of *lex loci delicti*. 'The result was an unworkable irrational system.' 3 Dooley, Modern Tort Law, § 46.02 (1977). Even without this judicial maneuvering, certainty and predictability were irrelevant considerations in the case of unintentional torts such as presented in the instant case.

"Secondly [addressing the argument that alternative theories would lead to varying, inconsistent and unpredictable results], while the alternative theories to *lex loci delicti* admittedly have experienced some growing pains, the need to take into account factors other than the geographical location of the tort justifies this added burden. As with any new rule of law, it is to be anticipated that there will be some refinement and adjustment; but this is inherent in the judicial process.

Ease of administration alone is a wholly inadequate reason for retention of an unjust rule. Further, it is open to question whether *lex loci delicti* truly was easy to administer * * *.

"Finally [addressing the argument that *stare decisis* precludes abandonment of *lex loci delicti*], the doctrine of *stare decisis* does not stand as an insurmountable bar to overruling precedent. *Stare decisis* prevents change for the sake of change; it does not prevent any change at all. It creates a strong presumption in favor of the established law; it does not render that law immutable. Indeed, the genius of the common law rests in its ability to change, to recognize when a timeworn rule no longer serves the needs of society, and to modify the rule accordingly. *Lex loci delicti* had its origins in the days when travels across state lines [were] relatively rare and perhaps it served a useful purpose in that time. In today's highly mobile society, however, its continued application most commonly produces harsh and inequitable results. It is in recognition of this fact that courts and commentators are seeking to fashion a new rule more attuned to the demands of modern society."

## III

Review of the arguments for *lex loci* and the alternate choice-of-law methodologies convinces us that slavish devotion to the rigidities of *lex loci* no longer is either the reasonable policy to follow or the generally accepted law in the United States.[11] As a matter of fact, the courts of Michigan have frequently departed from *lex loci* in individual instances. For example, Professor Sedler of the Wayne State University Law School comments:[12]

*"The place of the wrong rule simply has not been*

---

[11] See fn 10 *supra.*

[12] Sedler, *Choice of Law in Michigan: A Time to Go Modern,* 24 Wayne L Rev 829, 839-840 (1978).

*followed consistently by the Michigan Court of Appeals
and by the federal courts in Michigan called upon to
apply Michigan conflicts law in diversity cases.* These
courts have not hesitated to employ all of the classic
'escape devices' and 'manipulative techniques' in order
to avoid the operation of the place of the wrong rule
and to bring about the application of Michigan law. In
practice, the place of the wrong rule has been honored
more in the breach than in the observance."

Going a step further the federal District Court
for the Northern District of Illinois opined for
what it is worth:

"Michigan, like California, has abandoned the tradi-
tional *lex loci delicti* approach to conflicts questions in
favor of the 'interests analysis' approach." *In re Air
Crash Disaster Near Chicago,* 500 F Supp 1044, 1052
(ND Ill, 1980).

When our *Abendschein* opinion was issued in
1969, the doctrine of *lex loci* retained substantial
currency in the industrialized states. Although a
multiplicity of alternatives had been presented in
the academic literature, there was considerable
hesitation to vary the ancient system by which
most jurisdictions handled choice-of-law problems.
More comfortable than adoption of new and poten-
tially unfortunate approaches was the practice of
employing manipulative techniques to avoid the
strictures of *lex loci.* Two very effective techniques
were "procedural characterization"—the law of
the forum governing on all matters which could be
denominated procedural—and "public policy" of
the forum state. Indeed, the Court of Appeals in
*Storie* relied upon the legislative judgment ex-
pressed in the aircraft owner's liability statute as
sufficiently compelling public policy for asserting
jurisdiction.

In the period following *Abendschein,* a significant development occurred. In evaluating the nine appellate and federal cases brought in Michigan between 1969 and 1978, Professor Sedler notes:

"The most 'universal' rule of choice of law is that when two residents of the forum are involved in an accident in another state, the forum will apply its own law. This rule of choice of law embodies the interest solution that when the forum has a real interest in applying its own law, it should do so. The application of this rule of choice of law in Michigan would cover *Branyan, Tucker, Sweeney, Papizzo, Shamie, DeVito* and *Wilson.*"[13]

This departure from the traditional rule by intermediate and federal courts presaged the pronouncement of this Court in *Sweeney v Sweeney,* 402 Mich 234; 262 NW2d 625 (1978). In that case a Michigan daughter sued a Michigan father driving a Michigan-insured and -registered car for injuries received in Ohio in a one-car accident. The Michigan Supreme Court, of course, had overruled intrafamily immunity, but Ohio retained it. *Sweeney* considered *Rick v Saginaw Bay Towing Co,* 132

---

[13] Sedler, *supra,* 849. All the following cases involve Michigan plaintiffs and defendants except *Papizzo* where the defendant was an Ontario corporation. *Tucker v Norfolk & W R Co,* 403 F Supp 1372 (ED Mich, 1975), refused to apply *Abendschein* because of self-limiting language in *Abendschein* regarding intra-family litigation. In *Papizzo v O Robertson Transport, Ltd,* 401 F Supp 540 (ED Mich, 1975), *Abendschein* was applied for substantive law but not for recoverable elements of damage. *DeVito v Blenc,* 47 Mich App 524, 528; 209 NW2d 728 (1973), with two Michigan residents and accident in Ontario, defeated the Ontario statute of limitations with the Michigan tolling statute, which "reflects a policy of protecting the rights of those under disability". In *Wilson v Eubanks,* 36 Mich App 287; 193 NW2d 353 (1971), with two Michigan residents and Ontario accident, defendant failed to timely plead the Ontario statute of limitations and was denied amendment of pleadings. In *Shamie v Shamie,* 45 Mich App 384; 206 NW2d 463 (1973), the foreign statute of limitations was used because of the Michigan borrowing statute. *Branyan* and *Sweeney* are discussed in the text.

Mich 237; 93 NW 632 (1903); *Eskovitz v Berger,* 276
Mich 536; 268 NW 883 (1936); and *Kaiser v North,*
292 Mich 49; 289 NW 325 (1939), but recognized a
court decision overruling intra-family immunity as
public policy sufficient to mandate use of the *lex
fori.* Present Chief Justice COLEMAN, writing for a
unanimous Supreme Court, rejected the Court of
Appeals application of the doctrine of *lex loci* and
said:

> "Automatic application of *lex loci delicti* in this
> daughter against father suit would frustrate an an-
> nounced Michigan public policy. Whether *lex loci delicti*
> should be applied in other situations is not decided
> here." 402 Mich 242.

In other words, we rejected *lex loci* in that case
and indicated that the future application of *lex
loci* would be decided in each case as it came up.

The early statement of this deference to the
public policy of the *lex fori* was in such restricted
terms as that used in 16 Am Jur 2d, Conflict of
Laws, § 101, p 168: "contrary to an extraordinarily
strong public policy of the forum state". This test
was exemplified by three earlier Michigan cases.

All three cases involved Michigan parties but
out-of-state accidents. In all three, Michigan public
policy was urged to defeat application of *lex loci*
but rejected. The test for public policy used in *Rick*
(132 Mich 237, 240) and *Eskovitz* (276 Mich 536,
541) was "against good morals or natural justice".
In *Kaiser* this Court said:

> "The fact Michigan statutory regulations of the rights
> of a motor vehicle guest passenger may differ from
> Ontario statutory provisions, or even the provisions of
> the common law governing like rights, is not a reason
> for holding the statute of the foreign jurisdiction con-
> travenes public policy here." 292 Mich 49, 57.

The other two cases likewise refused to consider Michigan legislation as declaring a public policy sufficient to defeat *lex loci.* 132 Mich 237, 240; 276 Mich 536, 541.

This restrictive definition of public policy was departed from in *Lieberthal v Glens Falls Indemnity Co,* 316 Mich 37, 40; 24 NW2d 547 (1946). There a Michigan resident sued a New York auto liability insurer in Michigan because of an accident in Wisconsin. Wisconsin law permitted suit against an auto liability insurer but Michigan statutes did not. This Court barred use of the Wisconsin law on the basis of the Michigan statute. Justice NORTH, for three justices, said:

"Public policy of a State is fixed by its Constitution, its statutory law, and the decisions of its courts; and when the legislature enacts a law within the limits of the Constitution, the enactment insofar as it bears upon the matter of public policy, is conclusive. See *In re McKee's Estate,* 71 ND 545; 3 NW2d 797 [1942], wherein, quoting from an earlier case, it is said: 'Public policy is but the manifest will of the State. * * * And when the legislature has spoken and enacted a law embodying a certain principle, the policy is determined.' Michigan's public policy touching the phase of the law under consideration has been definitely fixed by statute." 316 Mich 40-41.

While the plurality of the Court recognized the contrary rule in *Kaiser,* it purported to distinguish it. 316 Mich 37, 42-43.

*Lieberthal,* then, is authority for a public policy exception to *lex loci* based on a Michigan statute, and *Sweeney* is similar authority based on case law.

A more recent case following *Lieberthal, Branyan v Alpena Flying Service, Inc,* 65 Mich App 1; 236 NW2d 739 (1975), involved Michigan citizens

in a Virginia aircrash. The Court of Appeals recognized *Abendschein,* distinguished it as being self-limiting to " 'motor car (not airplane) accidents' ", *id.,* 5, stated "that the strict *lex loci delicti* rule should be abandoned", *id.,* 7, and decided Michigan law should be used because the Virginia law was contrary to a Michigan statute. *Id.,* 8-9. It quoted *Lieberthal, supra,* as follows:

"Public policy of a State is fixed by its Constitution, its statutory law, and the decisions of its courts; and when the legislature enacts a law within the limits of the Constitution, the enactment insofar as it bears upon the matter of public policy, is conclusive." *Id.,* 8.

It also weighed the relative contacts and interests of Michigan and Virginia in favor of Michigan.

A Court of Appeals case subsequent to Professor Sedler's article, *Shaheen v Schoenberger,* 92 Mich App 491, 494; 285 NW2d 343 (1979), is very interesting in that it considers *Abendschein* and rejects its strictures, deriving support from both *Sweeney* and *Branyan.* The question involved was whether the limitation of damages of the *lex loci delicti* state, Florida, should apply where all the parties were Michigan residents. The Court of Appeals said:

"[I]n *Sweeney v Sweeney,* 402 Mich 234; 262 NW2d 625 (1978), the Supreme Court took a second look at the 'hard and fast' rule of *Abendschein.* After careful analysis the Court held that application of the *lex loci delicti* (Ohio) which bars suit between a parent and child (based on an automobile accident) would frustrate announced Michigan public policy where the litigants were Michigan residents. Clearly the approach set forth in *Branyan* was impliedly approved in *Sweeney* in determining any individual exceptions to the *lex loci delicti* rule. Thus both *Branyan* and *Sweeney* are appli-

cable to the question presented herein. See *Storie v Southfield Leasing, Inc,* 90 Mich App 612; 282 NW2d 417 (1979).

"* * * The statute embodies the state's public policy in this regard. This policy, coupled with Michigan's interest in the survivors' well-being, operates under the facts in this case to except the elements of damages from the *lex loci delicti* rule."

It is clear that the Court of Appeals in *Shaheen,* as in *Branyan* and *Lieberthal,* treats any legislative enactment as a sufficient public policy to transfer choice of law from the *lex loci delicti* to the forum state.

On the other hand, there have been six other Court of Appeals conflicts-of-laws decisions citing *Abendschein* with approval and two Michigan federal decisions.[14] All but two of the cases were routine acceptance of stare decisis. Three cases were controlled by the Michigan borrowing statute.

*Turner v Ford Motor Co,* 81 Mich App 521; 265 NW2d 400 (1978), was actually controlled by the Michigan borrowing statute on the basis of the applicable statute of limitations. However, the Court relied on *Rick, Eskovitz,* and *Kaiser* to reject a public policy exception. In *Hill v Clark Equipment Co,* 85 Mich App 1; 270 NW2d 722 (1978), *lv den* 405 Mich 805 (1979), *Abendschein* was cited as controlling. A public policy exception was rejected

[14] *Hill v Clark Equipment Co,* 85 Mich App 1; 270 NW2d 722 (1978), *lv den* 405 Mich 805 (1979); *Turner v Ford Motor Co,* 81 Mich App 521; 265 NW2d 400 (1978); *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686; 218 NW2d 52 (1974), *lv den* 392 Mich 803 (1974); *Hill v Clark Equipment Co,* 42 Mich App 405; 202 NW2d 530 (1972), *lv den* 388 Mich 801 (1972); *Pusquilian v Cedar Point, Inc,* 41 Mich App 399; 200 NW2d 489 (1972), *lv den* 388 Mich 776 (1972); *Olsen v Larson,* 26 Mich App 73; 182 NW2d 50 (1970), *lv den* 384 Mich 797 (1971); *Parets v Eaton Corp,* 479 F Supp 512 (ED Mich, 1979); *Korzetz v Amsted Industries, Inc,* 472 F Supp 136 (ED Mich, 1979).

on the basis that plaintiff was not a Michigan resident to whom a public policy would apply.

## IV

Having examined what law Michigan and other jurisdictions have applied where forum citizens have been involved as both injuring and injured parties in accidents in other states, we are convinced that the state of the law is in such flux that there is no overwhelming pressure of stare decisis to compel us to follow the traditional rule of *lex loci delicti* unless we have reason to believe that that rule would be in the best interest of the people of our state. After careful consideration, we perceive no reason why the rule of *lex loci delicti* would generally benefit citizens of Michigan.

The principal argument for following *lex loci delicti* has always been that it would provide certainty and predictability. As Chief Justice Traynor said in *Reich v Purcell,* 67 Cal 2d 555, *supra,* the rule of *lex loci delicti* "no longer affords even a semblance of the general application that was once thought to be its great virtue". Both Judge Field and Justice Johnson made similar observations in their opinions. Professor Sedler in commenting on following *lex loci delicti* in Michigan observed the "rule simply has not been followed consistently by the Michigan Court of Appeals and by the federal courts in Michigan". Sedler, *supra,* 24 Wayne L Rev 839. We are thus confronted with the proposition that in the real world the argument of certainty, the chief argument in favor of *lex loci delicti,* no longer is tenable.

The other argument in favor of *lex loci delicti,* avoidance of forum shopping, is not a strong argu-

ment as against citizens of the forum state who presumably have every reason of convenience and economy to be entitled to service in their own state. To this, of course, can be added the fact that the forum state generally has an interest in seeing that its injured citizens are well-served and that its citizen defendants are afforded every protection that such citizens would have in their own state. Additionally, where both the plaintiff and the defendant are citizens of the forum state, the state where the wrong took place will normally have no interest in the litigation.

The upshot of all of this is that there appears to be no real reason to retain the rule of *lex loci delicti,* on the one hand, while, on the other hand, there seems to be good reason and practical pressure in Michigan for the forum state to apply its own law. Furthermore, as we have developed, there are numerous precedents in other states to apply the *lex fori.*

As a consequence of these premises, in the normal common-law tradition, we hold that where Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs and defendants in Michigan courts, the courts will apply the *lex fori,* not the *lex loci delicti,* and we do so without reference to any particular state policy. We reach this conclusion on the facts and reasoning herein developed. We do not here adopt the law of dominant contacts or any other particular methodology, although any such reasoning may, of course, be argued where persuasive and appropriate.[15]

---

[15] This decision does not overrule *Anderson v Great Lakes Dredge & Dock Co,* 411 Mich 619; 309 NW2d 539 (1981), concerning instances where the doctrine of *forum non conveniens* may be appropriate.

V

Having held that the doctrine of *lex loci delicti* does not apply to cases where all of the parties are either Michigan residents or doing business within this state, we next turn to the second issue upon which this Court granted leave: "whether the Michigan owners' liability statutes have extra-territorial application". 407 Mich 897, 908 (1979).

The general rule of law is "that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction". 73 Am Jur 2d, Statutes, § 357, p 491. This extraterritoriality rule has a long history in international and common law. See 15A CJS, Conflict of Laws, § 6, p 411. However, as populations and technology progressed and travel between countries and among the states increased to an everyday occurrence, exceptions to the general rule of extraterritoriality were created so that it is now recognized that "a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries". 73 Am Jur 2d, Statutes, § 357, p 491. See, *e.g., United States v Curtiss-Wright Export Corp,* 299 US 304; 57 S Ct 216; 81 L Ed 2d 255 (1936) (presidential proclamation authorized by joint congressional resolution prohibiting sale of arms to South American countries upheld); *North Alaska Salmon Co v Pillsbury,* 174 Cal 1; 162 P 93 (1916); *Tattis v Karthans,* 215 So 2d 685 (Miss, 1968) (defamation statute).

In order for a statute to have extraterritorial application, there must be clear legislative intent.

"Unless the intention to have a statute operate be-

yond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. These rules apply to a statute using general words, such as 'any' or 'all,' in describing the persons or acts to which the statute applies." 73 Am Jur 2d, Statutes, § 359, p 492.

Therefore, we now turn to the controlling Michigan statutes.

The motor vehicle owners' liability statute, first enacted in 1909,[16] states:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family". MCL 257.401; MSA 9.2101.

---

[16] 1909 PA 318, § 10, subds 2 & 3. The 1909 predecessor to today's motor vehicle liability act was declared unconstitutional in *Daugherty v Thomas*, 174 Mich 371, 390; 140 NW 615 (1913). The Legislature subsequently modified and re-enacted the statute, 1915 PA 302, § 29, and this Court upheld the legislation in *Bowerman v Sheehan*, 242 Mich 94, 101-102; 219 NW 69 (1928).

The aircraft owner's liability statute, first enacted in 1958, is very similar:

"The owner or operator or the person or organization responsible for the maintenance or use of an aircraft shall be liable for any injury occasioned by the negligent operation of the aircraft, whether the negligence consists of a violation of the provisions of the statutes of the state, or in the failure to observe ordinary care in the operation, as the rules of the common law require." MCL 259.180a; MSA 10.280(1).

Except for the motor vehicle statute's added provision requiring the owner to have "express or implied consent or knowledge", the two statutes are basically identical.

We are not convinced that the application of the owners' liability statutes under these facts results in an extraterritorial application of Michigan law. The Legislature is not regulating the tortious conduct of the operators of the vehicles, but rather the relationship between the owner and the operator.

"The purpose of the [motor vehicle owners' liability] statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.

*"The owner who gives his keys to another,* and permits that person to move several thousand pounds of steel upon the public highway, *has begun the chain of events which leads to damage or injury.*

*"The statute makes the owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury." Roberts v Posey,* 386 Mich 656, 662; 194 NW2d 310 (1972) (emphasis added).

In the two cases before us the owner-operator relationship took place exclusively in Michigan. In both instances, plaintiffs' employers contracted for

and received possession of the leased vehicles from defendants in Michigan for use by their employees. "[T]he chain of events which leads to damage or injury" was forged in this state.

The cause of action giving rise to the law suits now before us is not based on any tortious action by defendants but rather on strict statutory liability. As this Court noted in *Geib v Slater,* 320 Mich 316, 321; 31 NW2d 65 (1948), "Defendant is guilty of no tortious act; he did not participate in the commission of the tort; and his liability arises only by operation of law."

This "quasi" tort, Black's Law Dictionary (4th ed), pp 1660-1661, did not arise in Ohio or Virginia but in Michigan. Although one or more operators may have been negligent in the operation of their vehicles outside this state, this cause of action is not founded on their conduct but on the relationship between Michigan owners and Michigan operators. Therefore, we find that under the facts of this case MCL 257.401; MSA 9.2101 and MCL 259.180a; MSA 10.280(1) are not given extraterritorial application.

In order to achieve the legislative purpose of the owners' liability statutes, the owners' liability statutes must be given uniform application.

The purpose of the owners' liability statutes is "to place the risk of damage or injury upon the person who has ultimate control of the vehicle", *Roberts, supra,* 662, and thereby promote safety in transportation. However, this purpose cannot be fully effectuated unless the owners' liability statutes are given uniform application to residents of this state traveling outside of Michigan as well as persons within our state.

In order to successfully modify conduct, the regulating force, whether it be criminal or civil,

must be quickly, consistently and assuredly applied to the undesirable conduct. To enforce the owners' liability statutes on the basis of where the accident occurred would undermine the effectiveness of these important statutes. The public safety promoted by MCL 257.401; MSA 9.2101 and MCL 259.180a; MSA 10.280(1) can only be realized where owners are certain that they will incur liability whenever they entrust their vehicles to negligent operators. Any narrower application of these statutes would encourage irrational conduct by the owners in their entrustment. Therefore, there is good reason for this Court to apply the owners' liability statutes uniformly.

We have now decided that where two parties to an accident in another state are both Michigan citizens or are doing business in Michigan, the *lex fori* controls. Thus, if there were a one-car accident in another state and both occupants were from Michigan, particularly if the trips began in Michigan, an injured passenger could sue the negligent driver in Michigan and Michigan law would be employed. However, suppose that the driver of the car was not the owner, and that the owner who had turned over the car to him also lived in Michigan. Would it not be anomalous if the injured Michigan party, who could sue the Michigan driver who was negligent in another state in a Michigan court under Michigan law, could not sue the Michigan owner whose obligation to the injured Michigan party arose out of his entrusting his car in Michigan to a Michigan driver who subsequently injured a Michigan person in that car? It would seem particularly anomalous given the fact the Michigan owners' liability statute is triggered by the absolute liability created by the entrustment which occurred in Michigan. We believe this line of inquiry further corroborates our

view that the operation of the Michigan owners' liability statute involves an intraterritorial impact rather than an extraterritorial impact.

To conclude, we hold that the owners' liability statutes are not given extraterritorial application where the owner and operator relationship arises in Michigan. However, even if we were to hold otherwise, it would be proper to give MCL 257.401; MSA 9.2101 and MCL 259.180a; MSA 10.280(1) uniform application and apply them extraterritorially.

## VI. CONCLUSION

The doctrine of *lex loci delicti* has come under both academic and judicial attack throughout the United States. Michigan case law reflects the increasing strain between the old and obsolescent common-law rule and the many exceptions used to get around it. In *Sweeney,* we refused to permit the "[a]utomatic application of *lex loci delicti* * * * [to] frustrate an announced Michigan public policy". We go further today. Finding that the rationale behind the doctrine of the universality and conformity of *lex loci delicti* is no longer tenable and recognizing that there seems to be good reason and precedent in Michigan for the forum state to apply its own law, we hold that where Michigan residents or corporations doing business in Michigan are involved in accidents in another state and where they appear as plaintiffs and defendants in Michigan courts in a tort action, the courts will apply the *lex fori,* not the *lex loci delicti.*

We further hold that the two owners' liability statutes are not given extraterritorial application where the *owner* and operator relationship arises

in Michigan. Yet even were we to hold otherwise, legislative intent and public policy require that the owners' liability statutes be given uniform application to all Michigan motor vehicle and aircraft owners. Therefore, *Sexton* is reversed and *Storie* is affirmed.

Levin and Blair Moody, Jr., JJ., concurred with Williams, J.

Kavanagh, J. We agree that *Sexton* should be reversed and *Storie* affirmed and so concur in the result reached by Justice Williams.

We have followed the doctrine of *lex loci delicti* in Michigan tort law with some consistency for approximately 100 years, although in no case has this Court explained *why* the law of the place of the wrong should determine the rights of the parties.

In the cases before us, we are asked to give effect to two Michigan statutes providing for owners' liability for damages caused by accidents involving use with the owners' consent of an automobile in one case and an airplane in the other.

The reason urged for not giving effect to these statutes in each instance is that the accident occurred beyond the boundaries of the State of Michigan. We no longer consider that fact controlling or even of great significance.

The power of a state to effect legal consequences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences. *Alaska Packers Ass'n v Industrial Accident Comm of California,* 294 US 532, 541; 55 S Ct 518; 79 L Ed 1044 (1935).

The status of ownership giving rise to the legal consequence of liability has been regulated in

Michigan by MCL 257.401; MSA 9.2101 and MCL 259.180a; MSA 10.280(1) and so the occurrence of the accident beyond Michigan's boundaries is not controlling under these Michigan laws.

LEVIN and FITZGERALD, JJ., concurred with KAVANAGH, J.

LEVIN, J. *(concurring)*. I have signed both Justice WILLIAMS' and Justice KAVANAGH's opinion and hence a word of explanation appears to be in order.

Justice WILLIAMS' opinion would hold that, in an action commenced in Michigan growing out of an accident in another state, Michigan common and statutory law shall be applied whenever the plaintiff and defendant are both either residents of or corporations doing business in Michigan. Justice KAVANAGH's opinion would hold that in a tort action commenced in Michigan, the domestic law of this state shall govern absent a reason for applying the law of another state and that the place of the wrong is not a reason for not applying Michigan domestic law.

For reasons set forth in Justice WILLIAMS' opinion, where the plaintiff and the defendant are both either Michigan residents or corporations doing business in this state, ordinarily there will be insufficient reason for applying the law of another state.

Unless the defendant has some relationship with Michigan sufficient to subject him, her or it to long-arm jurisdiction, the question whether Michigan or some other law should apply will not arise because the defendant will not have effectively been made a party to the action. Unless the plaintiff has a relationship with Michigan, the case will (absent a relationship with Michigan on the part

of defendant) be subject to dismissal under the doctrine of *forum non conveniens.*

In those circumstances, there appears to be little reason to have one choice-of-law rule for lawsuits where the defendant is subject to the jurisdiction of Michigan because he, she or it resides or does business in this state and another rule for lawsuits where the defendant is subject to Michigan jurisdiction because of some other relationship with this state. I therefore agree with Justice KAVANAGH that we should go the distance and declare that Michigan law will apply in all personal injury and property damage actions without regard to whether the plaintiffs and defendants are all Michigan persons unless there is compelling reason for applying the law of some other jurisdiction,[1] and that merely because the injury arose out of an occurrence in another state is not such a reason.

The opinions of the justices today have implications for other choice-of-law questions. There will be an effort to extend this retreat from *lex loci delicti* to choice-of-law questions in other fields of law. Those questions are not now presented. The Court should not now attempt to prognosticate their disposition. The Court is uninformed of the implications of extending the concepts today adopted for personal injury and property damage actions to other fields of law.[2] It should, therefore, be emphasized that the choice of law in other

---

[1] I agree that the Michigan civil liability statutes apply where the loss arises out of an accident involving a vehicle which had a situs in Michigan when permission to use the vehicle was granted in Michigan and the journey began in Michigan.

[2] The Court has over the years seen a considerable number of personal injury and property damage choice-of-law questions in differing factual situations. The paucity of litigation reaching this Court presenting choice-of-law questions in other fields of law suggests caution in reconsidering prior choice-of-law precedent in those fields of law.

fields of law continues to be governed by precedents (based essentially on the *lex loci* doctrine) and that, accordingly, neither the Court of Appeals nor the trial courts are authorized to depart from heretofore established choice-of-law rules in other fields of law.

In a personal injury or property damage action where the judge concludes that there is a compelling reason to apply the law of some other jurisdiction, he should state the reason for so concluding on the record so that the question can be reviewed with his reasons in mind.

RYAN, J. *(dissenting).* We are not yet persuaded that we should retreat from the position this Court took in *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969), for the reasons stated therein. Accordingly, we would affirm the Court of Appeals in *Sexton v Ryder Truck Rental, Inc,* and reverse the Court of Appeals in *Storie v Southfield Leasing, Inc.*

COLEMAN, C.J., concurred with RYAN, J.