## MAY v. MULLIGAN.
### No. 25.

District Court, W. D. Michigan, S. D.
June 15, 1939.

Howard, Howard & Howard, of Kalamazoo, Mich., for plaintiff.

Mason, Sharpe & Stratton, of Kalamazoo, Mich., for defendant.

RAYMOND, District Judge.

### Findings of Fact.

1. Plaintiff is a resident of the State of Illinois and is a management and industrial engineer engaged in the business of installing systems covering sales and administrative expenses, budgets, accounting, cost methods, etc.

2. Defendant was a resident of the State of Illinois at the time the contracts hereinafter referred to were entered into, but since January 1, 1939, has been and, at the time of the commencement of this suit, was a resident of the State of Michigan.

3. On or about May 10, 1937, defendant entered the employ of plaintiff under a written contract (Exhibit C), which recited the use by plaintiff of certain trade secrets and his desire to protect and preserve them for his own use. This contract contained certain restrictive covenants and, among others, the following: "4. (a) Second party agrees that he will not while this agreement remains in effect or at any time within two years thereafter * * * enter into the employ of any individual, partnership, corporation, or associate corporations having interlocking directors who may be

or about to become a client or clients of the First party."

The contract further provided that if defendant, while the contract was in force or at any time within two years thereafter, should violate this restrictive covenant, plaintiff would be entitled to an injunction restraining defendant from the continuance thereof.

4. Defendant entered plaintiff's employ under said contract and continued thereunder until on or about June 18, 1938, on which date six engineer's working agreements were entered into between the plaintiff and defendant containing restrictive covenants applicable to various territories but including in the aggregate the entire United States and considerable portions of the Dominion of Canada. The one pertaining to Chicago territory (including the State of Michigan) is attached to the bill of complaint as Exhibit 1, the restrictive provision of which, pertinent to this case, reads: "4. Employee agrees that he will not, while this agreement remains in effect, or at any time within a period of two years from the date of cancellation or termination of this agreement * * * Enter into the employ of any individual, partnership, corporation, or associate corporations having interlocking Directors, who have or are about to become a client or clients of Employer."

Defendant remained in the employ of plaintiff under these contracts until about January 1, 1939.

5. During the term of his employment, defendant worked as operating engineer for several of plaintiff's clients and on October 31, 1938, became a supervisory engineer.

6. On or about August 8, 1938, the Kalamazoo Stove & Furnace Company, of Kalamazoo, Michigan, employed the plaintiff to make a preliminary analysis or survey of its business to determine where and how reductions in costs or improvement in methods could be effected.

7. A survey report with recommendations was made to the Kalamazoo Stove & Furnace Company by employees of plaintiff on September 8, 1938, and a supplemental report was made on September 19, 1938. The Kalamazoo Stove & Furnace Company did not authorize plaintiff to proceed with installation of the recommendations made and did not thereafter renew its relationship with plaintiff.

8. Defendant was in no way connected with either the survey or the report of the Kalamazoo Stove & Furnace Company but was at that time engaged in a similar survey of the A B Stove Company at Battle Creek, Michigan.

9. On or about October 15, 1938, the Kalamazoo Stove & Furnace Company advertised for an experienced plant executive with mechanical and industrial engineering background to fill a position made vacant through the transfer of a former employee to a newly acquired plant located in the East. Defendant applied for and obtained the position and on December 31, 1938, terminated his contract with the plaintiff and entered and still remains in the employ of the Kalamazoo Stove & Furnace Company where he was given complete charge of production.

10. The evidence is not clear and convincing that at the time defendant entered the new employment the Kalamazoo Stove & Furnace Company was or was about to become a client of plaintiff within the meaning of the agreement of May 10, 1937, and if the purpose of the contract of June 18, 1938, was to restrict employment with those who "have been clients" of plaintiff, such intent is imperfectly expressed.

11. While there is considerable circumstantial evidence leading to the conclusion that the contract of the defendant with and his employment by the Kalamazoo Stove & Furnace Company was brought about by reason of his connection with and employment by plaintiff, the direct testimony is to the contrary. However, determination of this issue is not necessary.

12. The Kalamazoo Stove & Furnace Company is not engaged in business in any way competing with that of plaintiff and the record does not indicate that plaintiff has been or will be deprived of any business through the fact that defendant is employed by the Kalamazoo Stove & Furnace Company.

Conclusions of Law.

1. The contract in suit was made between citizens of Illinois and is an Illinois contract.

2. Contract provisions such as those here sought to be enforced are declared by Section 16667, Compiled Laws of Michigan of 1929, to be against public policy and illegal, in the following language: "All agreements and contracts by which any

598

person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

3. Assuming (without determining) the validity in the State of Illinois of the contracts of defendant with plaintiff, the public policy of the State of Michigan declared by its legislature is binding not only upon the courts of the State of Michigan but upon the federal courts sitting therein in a suit which seeks enforcement of contracts which are contrary to the public policy of the state thus declared.

4. It is the settled law in Michigan that a contract which is void as against the public policy of the state will not be enforced by its courts even though the contract was valid where made.

5. Where the legislature has clearly declared the public policy of the state, the courts may not determine the degree of importance to the State of Michigan involved in enforcing contracts contrary to such public policy.

6. Judgment of no cause of action will be entered in favor of defendant.

█ The findings herewith filed sufficiently disclose the nature of the issues. The ambiguous language of the restrictive covenant relied upon and the uncertainty as to whether plaintiff has established by clear and convincing evidence that the Kalamazoo Stove & Furnace Company "have" or was "about to become" a client of plaintiff seem to preclude a conclusion that plaintiff has established by sufficiently clear and convincing evidence facts upon which could be predicated the discretionary power of the court to grant plaintiff remedy by way of injunction. Determination of these questions, however, becomes unnecessary since they are of consequence only if the validity and enforceability in Michigan of the restrictive covenant are resolved in favor of plaintiff. The court is satisfied in any event that the provisions of the Michigan statute, Section 16667, Compiled Laws Michigan, 1929, quoted in the findings, bar the remedy sought by plaintiff. Plaintiff urges that this statute applies only to Michigan contracts between Michigan citizens. The authorities do not support this contention. The correct principle is stated with ample citation of cases in 11 Am.Jur., Conflict of Laws, Sec. 125, 126, as follows,—

"The public policy of a state, established either by express legislative enactment or by the decisions of its courts, is supreme and when once established will not, as a rule, be relaxed even on the ground of comity to enforce contracts, which, though valid where made, contravene such policy.

"Courts which declare a contract void as against public policy are not declaring the intention of the parties, as in the ordinary case, but are acting under the obligation of the higher law, which requires the enforcement of that which is for the public good. * * *"

" * * * Ordinarily, the lex fori will not permit the enforcement of a contract regardless of its validity where made or when to be performed, where the contract in question is contrary to good morals, where the state of the forum or its citizens would be injured through the enforcement by its courts of contracts of the kind in question, where the contract violates the positive legislation of the state of the forum—that is, is contrary to its constitution or statutes,—or where the contract violates the public policy of the state of the forum. * * *"

█ Plaintiff also contends that the constitutional provisions against impairment of the obligations of contracts forbid the application of the Michigan statute to the contract here under consideration. This argument ignores the fact that the statute, enacted in 1905, antedated the contract by many years and that it must be presumed that, as to remedies provided for, the contract was entered into in contemplation of the then existing laws of Michigan, as well as of the other states included in the various contracts relating to different territories. See 12 Am.Jur., Constitutional Law, sec. 387, 435, where it is said:

"The provision of the Constitution which declares that no state shall pass any law impairing the obligation of contracts does not apply to a law enacted prior to the making of the contract, the obligation of which is claimed to be impaired, but only to a statute of a state enacted after the making of the contract. The obligation of a contract cannot properly be said to be impaired by a statute in force when the

contract was made, for in such cases it is presumed that it was made in contemplation of the existing law. * * *"

"Frequently, parties, in executing contracts, stipulate in the body of the contract what remedy is to be pursued in the event of a breach. In such cases the remedy agreed upon becomes a part of the obligation of the contract and any *subsequent statute* which affects the remedy impairs the obligation and is unconstitutional. * * *" (Italics added.)

These principles have recently been recognized and applied in the case of Home Building & Loan Ass'n v. Blaisdell, 290 U. S. 398, 434, 54 S.Ct. 231, 238, 78 L.Ed. 413, 88 A.L.R. 1481, wherein Chief Justice Hughes stated, "Not only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end 'has the result of modifying or abrogating contracts already in effect.' Stephenson v. Binford, 287 U.S. 251, 276, 53 S.Ct. 181, 189, 77 L.Ed. 288 [87 A.L.R. 721]. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court."

█ Plaintiff further urges that in any event it is incumbent on defendant to show a strong public interest on behalf of the citizens of Michigan in enforcement of the declaration that certain contracts are against public policy, and says that here that interest is but slight. Whatever of weight might be accorded such a contention in cases where the public policy relied on finds its source in other than statutory enactments, it is the view of the court that in cases where, as here, a rule of public policy has been determined by legislative enactment, the courts may not consider the degree of public interest involved. Such declarations are prerogatives of the legislature. See 12 Am.Jur., Contracts, Sec. 171, where it is said,

"What the public policy is must be determined from a consideration of the Constitution, the laws, the decisions of the courts, and the course of administration, not by the varying opinions of laymen, lawyers, or judges as to the demands of the interests of the public. * * *

"Where there are constitutional or statutory provisions, they govern as to what is the public policy. Where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts. * * * Primarily, it is the prerogative of the legislature to declare what agreements and acts are contrary to public policy and to forbid them. Where a statute prohibiting an act is an expression of public policy of the state that the act is against good morals and public interest and provides no penalty, an agreement in violation of the statute is illegal. Some of the courts, speaking upon this subject, have said that the immediate representatives of the people, in legislature assembled, would seem to be the fairest exponents of what public policy requires, since they are most familiar with the habits and fashions of the day and with the actual condition of commerce and trade—their consequent wants and weaknesses—and that legislation is least objectionable, because it operates prospectively, as a guide in future negotiations, and does not, like a judgment of a court, annul an agreement already concluded. Courts have no right to ignore or set aside a public policy established by the legislature. Therefore, it is the duty of the judiciary to refuse to sustain that which is against the public policy of the state as manifested by the legislation or fundamental law of the state."

In the case of Thompson v. Waters, 25 Mich. 214, 225, 12 Am.Rep. 243, it is stated, "* * * since the legislatures are the proper representatives of the public interest, and, having the exclusive power to determine what shall be the public policy of the state, if they have chosen to make no enactment upon the subject, it is natural to infer they omitted to do so because they thought it unnecessary, and that the generally recognized principles would be sufficient for such cases."

600

See, also, Bond v. Hume, 243 U.S. 15, 21, 37 S.Ct. 366, 61 L.Ed. 565; Grosman v. Union Trust Co., 5 Cir., 228 F. 610, Ann.Cas.1917B, 613; Id., 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368.

The legislature of Michigan having declared such a restrictive provision as is here being considered to be "against public policy and illegal and void", this court may not set aside or ignore that declaration on the ground that the public interest in its enforcement is but slight. Judgment will therefore be entered in favor of defendant, and the complaint will be dismissed.