**COMSHARE, INCORPORATED and Patricia Ann Palmer, Plaintiffs/Counter-Defendants,**

v.

**EXECUCOM SYSTEMS CORPORATION, Defendant/Counter-Plaintiff.**

**Civ. A. No. 84CV–7252–AA.**

United States District Court, E.D. Michigan, S.D.

Sept. 5, 1984.

---

Brian Sullivan, Ted T. Amsden, Dykema, Gossett, Spencer, Godnow & Trigg, Detroit, Mich., for plaintiffs/counter-defendants.

William F. Dennis, Daniel J. Bretz, Riley & Roumell, Detroit, Mich., for defendant/counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on plaintiffs' motion for summary judgment, and defendant's motion for change of venue. For the reasons stated herein, the motion of plaintiffs is granted in part, and the motion of the defendant is denied.

## FACTS

The eye of the storm in this case is a contract of employment formed between plaintiff Patricia Palmer and defendant Execucom Systems Corporation (Execucom) in September of 1979. Execucom is in the business of computer software products. Palmer served as Central Regional Manager for Execucom, and had responsibility for the sale of Execucom's products and services in an area described in her affidavit as the "midwestern and northeastern states, and all of Canada."

The employment contract defined an extensive array of the aspects of the employment relationship, including term, duties, location, hours and compensation. Article 6 of the agreement, entitled "Property Rights", contained several provisions of significance to this action.[1] Paragraph

1. The pertinent provisions of the contract read as follows:

### Trade Secrets

6.02 The Employee during the term of employment under this Agreement will have access to and become familiar with various trade secrets, consisting of computer programs, formulas, patterns, devices, secret inventions, processes, compilations of information, machines, records and specifications, which are owned by the Employer and which are regularly used in the operation of the business of the Employer. The Employee shall not disclose any of the aforesaid trade secrets, directly or indirectly, nor use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of his/her employment with Employer. Further, during the term of this Agreement or at any time thereafter, the Employee shall not, either directly or indirectly, make known to any person, firm or corporation the names and addresses of any of the customers of the Employer or any other information pertaining to them. All files, records, documents, drawings, specifications, equipment and similar items relating to the business of the Employer, whether prepared by the Employee or otherwise coming into his/her possession, shall remain the exclusive property of the Employer and shall not be removed from the premises of the employer without the prior written consent of the Employer unless removed in relation to the performance of Employee's duties hereunder. Any such files, records, documents, drawings, specifications, equipment and similar items, and any and all copies of such materials which have been removed from the premises of the Employer shall be returned by the Employee to Employer.

### Noncompetition by Employee

6.03 During the term of this contract the Employee shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of the Employer. Employee shall not be considered to be engaging or participating in any business in competition with the business of the Employer for merely owning, without anything more, five (5%) percent or less of the then outstanding shares of any class of stock of any publicly traded corporation.

6.04 Employee covenants and agrees as follows:

Upon termination of his/her employment, whether by termination of this Agreement, by wrongful discharge or otherwise, Employee shall not directly or indirectly, within the existing marketing area of the Employer or any future marketing area entered by Employer during the term of this Agreement, enter into or engage generally in direct competition with Employer, either as an individual on his/her own or as a partner or joint venturer, or as an employee or agent for any person, or as an officer, director, or shareholder or otherwise, for a period of three (3) years after the date of termination of his employment hereunder.

### Soliciting Customers After Termination of Employment

6.05 The Employee shall not for a period of three (3) years immediately following the termination of his/her employment with the Employer, either directly or indirectly call on or solicit, or attempt to call on or solicit, for the purposes of taking away or attempting to take away any of the customers of the Employer on whom the Employee called or with

6.02 provides that Palmer would have access to various trade secrets, and that she was prohibited from disclosing or using them in any way while employed with Execucom or at any time thereafter, except as required in the course of her employment. Paragraph 6.04 prohibits Palmer from competing with Execucom in any capacity for three years following the termination of her employment with the latter. Paragraph 6.05 is an elaboration on the preceding provision, and prohibits Palmer from soliciting customers whom she had met while employed by Execucom for three years following termination.

The contract recites that it was drafted and signed in Texas, and expressly provides that it is to be governed and construed by the law of Texas.

In January of 1984, Palmer left her position with Execucom to take a job with plaintiff Comshare, a direct competitor of Execucom. Palmer and Execucom entered into a "termination agreement", dated March 21 of this year. That agreement dealt with such matters as severance pay, medical benefits, and Execucom's promise to indemnify Palmer for any liability she might incur with respect to a particular distribution marketing agreement between Execucom and a third party. Paragraph 6 of the termination agreement again recited the prohibition against disclosure of trade secrets by Palmer. Paragraph 12 states in full as follows:

> This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof and contains all the covenants and agreements between the parties with respect to the subjects thereof.

Conspicuous by its absence from the termination agreement is a provision dealing with non-competition.

On May 18 of this year, Comshare and Palmer instituted this action in Washtenaw County Circuit Court, seeking injunctive relief against enforcement of the restrictive provision of the 1979 employment agreement by Execucom, and a declaration that the contract violated Michigan public policy, particularly that enunciated in M.C. L.A. § 445.761,[2] which prohibits enforcement of covenants not to compete by Michigan courts. The action was removed to this court by Execucom, as the parties are of diverse residence. Execucom filed a counter-claim against both plaintiffs, essentially seeking to enforce the employment

---

whom he/she became acquainted during his/her employment with the Employer, either for himself/herself or for any other person, firm or corporation. For purposes of this Section 6.05, the term "customer" shall include, but not be limited to, prospective customers, including, but not limited to, those prospective customers who have been contacted by employees of EXECUCOM, but have not entered into any agreement or contract with Employer.

*Soliciting Employees*

6.06 The Employee shall not during the term of this Agreement or at any time thereafter either directly or indirectly, enter into agreement with, or solicit the employment of, employees of Employer for the purpose of causing them to leave the employment of Employer or take employment with any business that is in competition in any manner whatsoever with the business of the Employer.

*Ownership of Customer Records*

6.07 All records of the accounts of customers and any other records and books relating in any manner whatsoever to the customers of the Employer, whether prepared by the Employee or otherwise coming into his/her possession, shall be the exclusive property of the Employer regardless of who actually purchased the original book or record. All such books and records shall be immediately returned by the Employee to the Employer on any termination of his/her employment. If the Employee purchases any such original book or record, he/she shall immediately notify the Employer, who shall then immediately reimburse him/her.

2. The statute provides as follows:

All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

Plaintiffs contend, and Execucom does not dispute that the exceptions to this prohibition against the enforcement of non-competition agreements, set forth in M.C.L.A. § 445.766, do not apply in this case.

contract.[3] Just for good measure, Execucom instituted another lawsuit in the United States District Court for the Northern District of Texas, alleging essentially the same claims that it has alleged in its counterclaim in this action.

## DISCUSSION

### Execucom's Motion for Change of Venue

Execucom has moved this court to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).[4] The motion and plaintiffs' response contain a plethora of accusations of forum shopping and other sinister motives. Execucom apparently fears that this court will be more inclined to expand the reach of Michigan statutory law, and restrict the scope of Texas law on the subject of the enforceability of contracts not to compete, whereas plaintiffs, who seek to hold this action in this court, are concerned with the reciprocal bias on the part of the Texas District Court.

This case is not unlike many that come before this court on motions to transfer under § 1404 for the convenience of the parties and in the interests of justice. Review of the arguments submitted by the parties indicates that, as usual, transfer would facilitate the convenience of the movant and cause considerable discomfort to the parties opposing the motion. Execucom states that its' offices are located in Dallas, and that most, if not all of the witnesses that it would call to trial to defend against this action are located in Texas.[5] Plaintiffs point out that they are both residents of this state, and that all of their witnesses are conveniently located within shouting distance of this court.

In such a case as this, where the prosecution of a lawsuit in a particular court will cause inconvenience to one party and comfort to its opponent, the courts have resolved the conflict by adopting the rule that the movant must demonstrate that the balance of convenience must strongly favor it, *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951); *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.*, 316 F.Supp. 1350 (E.D.Mich.1970). The plaintiff's choice of forum is an important factor to be considered, *Fitzgerald v. Texaco*, 521 F.2d 448 (2d Cir.1975). Because Execucom has failed to demonstrate that it would be more greatly inconvenienced if its motion is denied than plaintiffs would be if it is granted, the motion is denied.

### *Plaintiffs' Motion for Summary Judgment*

Plaintiffs contend that this action involves merely a legal determination of

---

3. Execucom's thirty-two page counterclaim is brought in eight counts: breach of the employment agreement; breach of contract; tortious interference with contractual relations; tortious interference with existing and prospective economic relations; promissory estoppel; breach of fiduciary duties; fraud; and unfair competition and unjust enrichment.

Although plaintiffs' motion for summary judgment is brought with respect to their own complaint, a finding by the court that they are entitled to relief would also entitle them to dismissal of certain counts of Execucom's counter-claim that arise under the employment contract, notably counts one and two. Instead of entering an order *sua sponte* directing the dismissal of certain claims, however, the court directs the parties to submit within 20 days of the entry of this opinion and order, a stipulation and proposed order of voluntary dismissal of those counts of the counter-claim which the parties agree are no longer viable in light of this opinion. If the parties are unable to reach agreement on the counts that have been dis-

posed of, plaintiffs are ordered to file a motion for summary judgment within 30 days of the entry of this opinion and order, directed only to those counts of the counter-claim which are rendered infirm by the law of the case, as set forth in this opinion.

4. The statute provides as follows:
(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

5. Execucom's protests that it would be unfair to require their employees to journey across the continent from Texas are undermined by the fact that at least two of those prospective witnesses, Sherry Reynolds, who replaced Palmer as Region Manager, and Nanci Nickoloff, Ms. Palmer's secretary while she worked at Execucom, both of whom have submitted affidavits in support of Execucom's response to plaintiffs' motion for summary judgment, currently reside in Chicago.

whether or not the covenant not to compete is valid and enforceable [6] and that there are no disputed factual issues, thereby making the case ripe for summary disposition under Fed.R.Civ.P. 56. Execucom has submitted affidavits challenging certain factual allegations made by plaintiff with respect to the covenant not to disclose trade secrets and other confidential, proprietary information, but has not otherwise put into issue any material fact with respect to the covenant not to compete.[7]

## Choice of Law

Plaintiffs' motion raises the threshold question of which state provides the law of decision on the issue of enforceability of the contract not to compete. Plaintiffs contend that M.C.L.A. § 445.761 prevents enforcement of this contract throughout the United States, because both plaintiffs, and the employment relationship that currently exists between them, are found in this state. Execucom contends that the express choice of Texas law should be honored by this court.

In support of their position, plaintiffs cite various cases from the federal courts of this state which have refused to enforce contracts not to compete under authority of § 445.761, see, e.g. *Muma v. Financial Guardian,* 551 F.Supp. 119 (E.D.Mich. 1982); *May v. Mulligan,* 36 F.Supp. 596 (W.D.Mich.1939). *See also Curtis v. Mueller,* 184 Mich. 148, 150 N.W. 847 (1915) (holding generally that a contract made in another state and valid there, is nonetheless unenforceable in this state if enforcement would violate established Michigan public policy). Plaintiffs seek to extend the holdings of these cases that such contracts which violate Michigan public policy are unenforceable by the courts of this state to a ruling by this court that the instant contact can not be enforced anywhere in the United States and Canada. Such a result would give extraterritorial effect to a Michigan statute, and prevent Execucom from obtaining the benefit of its contract in states which might have no such prohibition against such a contract.

Plaintiffs have provided the court with no authority for this remarkable proposition. In *Sexton v. Ryder Truck Rental,* 413 Mich. 406, 320 N.W.2d 843 (1982), the Supreme Court of this state was faced with a choice of law question in a personal injury case. Plaintiff had rented a truck from defendant, and was riding as a passenger while his traveling companion was driving when the truck overturned. The accident took place in Virginia. Plaintiff brought suit against defendant in this state, of which both parties were residents, and sought to take advantage of a Michigan statute, M.C.L.A. § 257.401, which provides that an owner of a motor vehicle shall be liable for any injury occasioned by the neg-

---

6. Plaintiffs initially moved for a determination that the covenant not to disclose trade secrets constituted an unseverable provision of the employment contract for which no separate consideration had been granted. As such, plaintiffs contend that the promise not to disclose trade secrets could not be enforced.

This court and others have consistently ruled that M.C.L.A. § 445.761 does not prohibit the enforcement of covenants not to disclose trade secrets and other confidential, proprietary information, even when such covenants are made together with unenforceable covenants not to compete, see, e.g. *Federal Screw Works v. Interface Systems,* 569 F.Supp. 1562 (E.D.Mich.1983) (Joiner, J.) (dictum); *Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp.,* 401 F.Supp. 1102, 1115 (E.D.Mich.1975); *Glucol Manufacturing Co. v. Schulist,* 239 Mich. 70, 214 N.W. 152 (1927). Counsel for plaintiffs conceded at the hearing on these motions that

they no longer contend that the covenant not to disclose trade secrets is unenforceable. Further, because the covenant not to disclose was incorporated in the 1984 termination agreement, Palmer is still bound not to disclose trade secrets, notwithstanding this court's holding that the 1979 agreement has been rescinded in its entirety.

7. There does appear to be some uncertainty as to the precise range of Palmer's territory while she was employed with Execucom. Palmer states rather vaguely in her affidavit that she was responsible for states in the "midwest and northeast", and that she did not service Texas except for a brief, interim period. Because the court ultimately concludes that the covenant not to compete has been rescinded by a subsequent agreement, the factual question of the territorial imitations of the covenant not to compete is not relevant to the court's ultimate holding.

ligent operation thereof. Defendant argued that the rule of *lex loci delicto* led to the selection of Virginia law, which contained no comparable owner liability rule. The Court analyzed the conflict of laws issue under the modern "interest analysis" framework, and concluded that Michigan had a greater interest than Virginia in having its substantive law govern the issue of liability in a case involving two Michigan residents, even though the accident occurred in another state, 413 Mich. at 438–39, 320 N.W.2d 843.

Plaintiffs contend that *Sexton* should be construed to expand the reach of Michigan statutory law in cases in which an employment relationship between two Michigan residents operates outside the boundaries of this state. The court finds this reading of *Sexton* overly broad, and unsupported by the precisely limited holding of the Court, which stated:

> ... Finding that the rationale behind the doctrine of the universality and conformity of *lex loci delicti* is no longer tenable and recognizing that there seems to be good reason and precedent in Michigan for the forum state to apply its own law, we hold that where Michigan residents or corporations doing business in Michigan are involved in accidents in another state and where they appear as plaintiffs and defendants in Michigan courts in a tort action, the courts will apply the *lex fori*, not the *lex loci delicti*.

*Id.* at 439, 320 N.W.2d 843.

Although this case does implicate the rights of Michigan residents and the legality of their conduct outside of this state, it also seeks an adjudication of the rights of a non-Michigan resident, who was also party to an employment relationship with one of the plaintiffs. In *Sexton*, no foreign party to the action sought to avoid the force of Michigan law by recourse to the law of the state in which it was a resident. This is precisely the situation in this case, however.

More important to this court's disposition of the issue of choice of law is the fact that this is a contract case, involving an agreement in which the parties have specifically designated the state whose law controls. The court turns to the Restatement of Conflicts, 2d, for guidance in this area, a source that has been applied by other federal courts in resolving choice of law questions in this area, *see, e.g. Nordson Corp. v. Plasschaert*, 674 F.2d 1371 (11th Cir. 1982). The operant provisions are sections 6, 186, 187, and 188, which are set out in the margin.[8]

---

**8.** Those sections provide as follows:

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

§ 186. Applicable Law

Issues in contract are determined by the law chosen by the parties in accordance with the rule of § 187 and otherwise by the law selected in accordance with the rule of § 188.

§ 187. Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which,

Section 187(1) of the Restatement directs the court to give effect to an express choice of law "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement on that issue."

The official comments to this subsection indicate that the express choice of law will be given effect unless the law of the designated state would have prohibited the parties from resolving the issue in a particular manner.[9] This subsection is directed at those aspects of contractual construction which are often the subject of statutory "gap-fillers", such as designation of the time and place for delivery when the contract is silent on those issues. Thus, unless Texas, the designated state in this contract, provides a rule that prohibits the parties from resolving the issue of the enforceability of the covenant not to compete,

that parties' express designation will be honored under § 187(1) of the Restatement. As the following discussion indicates, Texas, unlike Michigan, has no flat prohibition against the enforcement of this kind of covenant not to compete.

Even assuming that subsection (1) does not resolve the choice of law issue, plaintiffs are not entitled to prevail. Turning to subsection (2) of the same section of the Restatement, the court is directed to apply the law of the designated state unless (a) the chosen state has no substantial relationship to the parties or the transaction, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. Section 188 provides the criteria for deter-

**9.** The pertinent part of the Comment reads as follows:

under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

§ 188. Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

*c. Issues the parties could have determined by explicit agreement directed to particular issue.* The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties. So much has never been doubted. The point deserves emphasis nevertheless because most rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions. This is generally true, for example, of rules relating to construction, to conditions precedent and subsequent, to sufficiency of performance and to excuse for nonperformance, including questions of frustration and impossibility. As to all such matters, the forum will apply the provisions of the chosen law.

Whether the parties could have determined a particular issue by explicit agreement direct to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188. Usually, however, this will be a question that would be decided the same way by the relevant local law rules of all the potentially interested states. On such occasions, there is no need for the forum to determine the state of the applicable law.

mining which state has the greater interest in the outcome of the dispute, and it is to those criteria that we now turn.

Texas is both the place of contracting[10] and the place of negotiation, giving it the early lead under the first two criteria. It is also the place of incorporation and principal place of business of Execucom, although Michigan is home to the plaintiffs, so criteria (e) indicates a toss-up. Criteria (d) is nondispositive. The contract was one for the provision of professional services; if any state can be designated as the repository of the subject matter of the contract, it would be Illinois, where plaintiff resided while working for Execucom. The key criteria would appear to be (c), the place of performance. Illinois would again appear to be the most likely candidate, but neither party has urged that Illinois law should govern the issue of enforceability. Plaintiffs contend that Palmer was responsible for servicing a region that included Michigan but not Texas, and that Michigan therefore has a greater interest in the application of its law than does Texas.

■ The court concludes that application of the "interest analysis" framework delineated by the Restatement indicates that Michigan has a greater interest in the application of its laws to the issue of enforceability of the contract, but only with respect to competition which occurs between Execucom and Comshare in Michigan. Michigan does not .have a substantially greater interest in the enforcement of the contract outside of Michigan than does Texas. Therefore, the parties express choice should not be overruled by Michigan's tenuous interest, if any, in the extra-territorial application of its policy against contracts not to compete. The court concludes that, except with respect to enforcement of the contract in this state, a matter in which Michigan clearly has the predominant interest over Texas and all other states, the law of Texas applies to the enforceability of the contract. Such a decision is fully consonant with the decisions in *Muma, supra,* and *May, supra.*

### Application of Texas Law

■ Texas apparently has no statute directed to this kind of contract. Under the decisional law, covenants by an employee not to compete against an employer after termination of the employment relationship will be enforced "if reasonable", *Frankiewicz v. National Comp Associates,* 633 S.W.2d 505 (Tex.1982). The courts have looked both to the temporal and territorial scope of such contracts in passing on the issue of their reasonableness. The *Frankiewicz* Court concluded that a contract that contained no territorial limitation was unreasonable and unenforceable, *id.* at 507.

In the earlier case of *Weatherford Oil Tool Co. v. Campbell,* 340 S.W.2d 950 (Tex. 1960), the Court held that, although a contract not to compete that contained no temporal or territorial limitations could not support an action for damages brought by the employer, a court of equity would enforce the contract by granting an injunction, restraining the employee from competing for a time and within an area that was reasonable under the circumstances, *id.* at 952–53.

The instant contract limits the duration of the covenant not to compete to three years. As such, it has a reasonable duration, *see AMF Tuboscope v. McBryde,* 618 S.W.2d 105, 108 (Tex.Civ.App.1981) (noting that two to five years has repeatedly been held to be reasonable time in a non-competition agreement, and citing cases). The contract further provides that Palmer would not compete in any market in which Execucom had entered at the time of execution of the contract and which it subsequently entered during the pendency of the contract. Execucom has stated by way of affidavit that its current market encompasses the entire United States and Canada.

---

10. Although Palmer has stated by way of affidavit that she signed the employment contract in Chicago, the preamble to the agreement recites that it was executed in Austin, Texas. The court concludes that the agreement of the parties as to the place of execution controls when it appears that the physical document was signed in two different places.

■ In this respect, Execucom is grabbing for a little more than it is entitled to under Texas law. The courts have consistently held that a reasonable territorial scope for a contract of noncompetition is the area in which the employee actually worked for the employer, *AMF Tuboscope, supra; Gillen v. Diadrill,* 624 S.W.2d 259 (Tex.App.1981); *Weber v. Hesse Envelope Co.,* 342 S.W.2d 652 (Tex.Civ.App.1960). Although the parties to this action all seek complete victory, plaintiffs contending that the contract is void and unenforceable everywhere, while Execucom contends that it is enforceable everywhere, the court holds that the contract is enforceable under the cases cited above only in those states that plaintiff actually serviced during her employment with Execucom.

■ But for the execution of the 1984 agreement between Palmer and Execucom the court would be inclined to conclude that Palmer is effectively prohibited by the 1979 contract from competing against Execucom in all of the states for which she was responsible while serving as Regional Manager of Execucom, with the exception of Michigan, whose public policy prohibits enforcement of the contract, but free to compete elsewhere.[11] The court concludes however, that the 1979 contract was effectively rescinded by the subsequent termination agreement.

Execucom argues that the termination agreement did not purport to limit the previous employment agreement, but was directed only to "the subjects thereof", namely, those items demarcated by the termination agreement itself. The 1984 agreement does not purport to limit in any way the rights and obligations of the parties concerning competition that was established by the 1979 agreement, according to Execucom.

Plaintiffs contend, on the other hand, that the latter agreement evinces an intention to wipe the slate clean between Palmer and Execucom, and to relieve the parties of any rights and obligations not specifically set forth in that document.

This dispute calls forth the well-worn axioms of contract construction, most notably the cardinal rule that the reviewing court is to ascertain and give effect to the intention of the contracting parties, *see Piasecki v. Fidelity Corp.,* 339 Mich. 328, 63 N.W.2d 671 (1954). The 1984 agreement does not state that it specifically revokes the 1979 agreement, or leaves it intact, a rather glaring error of omission on the part of the draftsman of the latter agreement in light of the fact that the earlier instrument was the primary source of the rights and obligations running between Palmer and Execucom.

■ In construing the meaning of contractual terms, the court is not limited to the words on the paper, but must give meaning to those words in light of the circumstances prior to, and contemporaneous with, the making of the instrument, *see Seaboard Surety Co. v. Bachinger,* 313 Mich. 174, 20 N.W.2d 854 (1945).

The court concludes that the 1984 agreement evinces an intention to abolish the covenant not to compete. The parties specifically held intact the prohibition against disclosure of trade secrets. In light of the fact that Execucom was aware at the time of the drafting and execution of the 1984 document that Palmer had already begun working for Comshare, the court concludes that the absence of any reservation of rights, let alone a provision that the noncompetition provision, unlike the non-disclosure of trade-secrets provision, remained viable and enforceable, indicates that Execucom agreed to let Palmer out of her promise not to compete.

■ Execucom focuses upon the phrase "with respect to the subject matter hereof" in paragraph 12 of the 1984 agree-

---

**11.** Such a holding would involve a determination of which activities constitute competition in a particular state. For instance, would solicitation of General Motors, a Delaware corporation whose principal place of business is in Michi-

gan, constitute competition in Michigan or in Delaware? Because the court concludes that the contract has been rescinded and Palmer is now free to compete everywhere, it does not reach this thorny issue.

ment, quoted above, in arguing that the superseding provision of that paragraph was limited only to the specific items enumerated in that agreement. The court concludes that this hypertechnical reading of the document is at odds with the intention of the parties, as gleaned from the entire agreement, and the circumstances of its execution. As such, the literal meaning of isolated expressions must give way to the intent of the parties, *see W.O. Barnes Co. v. Folsinski*, 337 Mich. 370, 60 N.W.2d 302 (1953). The intention of the parties must be ascertained from the entire instrument, and not from detached or isolated provisions, *Florida Canada Corp. v. Union Carbide & Carbon Corp.*, 280 F.2d 193 (6th Cir.), *cert. denied* 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960).

For the foregoing reasons, the motion of plaintiffs for summary judgment with respect to its claim that the covenant to compete is no longer enforceable is granted.

SO ORDERED.